**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GERLING GLOBAL REINSURANCE
CORPORATION OF AMERICA, US
Branch; GERLING GLOBAL LIFE
REINSURANCE COMPANY; GERLING
GLOBAL LIFE INSURANCE COMPANY;
GERLING AMERICA INSURANCE
COMPANY; CONSTITUTION INSURANCE
COMPANY; REVIOS REINSURANCE
CANADA, LTD.; REVIOS
REINSURANCE U.S., INC.;
ASSICURAZIONI GENERALI S.P.A.;
AMERICAN INSURANCE ASSOCIATION;
AMERICAN RE-INSURANCE COMPANY,
          *Plaintiffs-Appellants,*

          and

WINTERTHUR INTERNATIONAL
AMERICA INSURANCE COMPANY;
WINTERTHUR INTERNATIONAL
AMERICA UNDERWRITERS INSURANCE
COMPANY; GENERAL CASUALTY
COMPANY OF WISCONSIN; REGENT
INSURANCE COMPANY; REPUBLIC
INSURANCE COMPANY; SOUTHERN
INSURANCE COMPANY; UNIGARD
INDEMNITY COMPANY; UNIGARD
INSURANCE COMPANY; BLUE RIDGE
INSURANCE CO.,
          *Plaintiffs,*

          v.

No. 04-15332

D.C. No.
CV-00-00506-WBS

6147

JOHN GARAMENDI, in his capacity
as the Insurance Commissioner of
the State of California,
                    *Defendant-Appellee.*

AMERICAN INSURANCE ASSOCIATION;
AMERICAN RE-INSURANCE COMPANY,
                    *Plaintiffs-Appellants,*

                    v.

JOHN GARAMENDI, in his capacity
as the Insurance Commissioner of
the State of California,
                    *Defendant-Appellee.*

No. 04-15455

D.C. No.
CV-00-00613-
WBS/JFM

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Chief Judge, Presiding

Argued and Submitted
December 13, 2004—Pasadena, California

Filed March 10, 2005
Amended June 3, 2005

Before: Alfred T. Goodwin, Susan P. Graber, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Goodwin;
Concurrence by Judge Graber

**COUNSEL**

Charles A. Rothfeld, Mayer, Brown, Rowe & Maw, LLP, Washington, D.C., for the plaintiffs-appellants.

Frank Kaplan, Alschuler Grossman Stein & Kahan, LLP, Santa Monica, California, for the defendant-appellee.

**ORDER**

The opinion filed March 10, 2005, slip op. 3137 and appearing at 400 F.3d 803 (9th Cir. 2005), is amended as follows:

400 F.3d at 809 (slip op. at 3150, 10th line from the bottom of the page): Following the citation at the end of the sentence, "We conclude that the unaddressed due process and Com-

merce Clause claims . . . pass the 'substantiality' test and therefore support an award of fees to the plaintiffs," add the following footnote and renumber the subsequent footnotes accordingly:

> FN 1:   The Commissioner and Amici argue that this result is contrary to *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 592 (1995). *Truck Council* held that where an adequate state law remedy exists in a state tax case, federal courts are not permitted to award declaratory or injunctive § 1983 relief. *Id.* at 589. The Court affirmed the Oklahoma Supreme Court's rejection of the plaintiff's § 1983 claims and declined to award § 1988 attorney's fees because § 1983 relief could not be awarded. *Id.* at 592. The *Truck Council* holding is entirely consistent with our decision. If a plaintiff does not have a substantial, properly cognizable § 1983 claim, then § 1988 attorney's fees may not be awarded. In addition, if the Supreme Court in this case had expressly affirmed *Gerling II*'s rejection of plaintiff's due process and Commerce Clause claims, then plaintiffs would not be entitled to § 1988 fees.

With the opinion thus amended, the panel has voted unanimously to deny the petition for rehearing. Judges Graber and Paez have voted to deny the petition for rehearing en banc, and Judge Goodwin recommended denial.

The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing is DENIED and the petition for rehearing en banc is DENIED.

No subsequent petitions for rehearing or petitions for rehearing en banc may be filed.

## OPINION

GOODWIN, Senior Circuit Judge:

This case returns to our calendar for the fourth time following its journey to the Supreme Court. Plaintiffs, three insurance companies and one insurance trade association, originally brought this action against the California Commissioner of Insurance ("Commissioner") seeking to bar the enforcement of the Holocaust Victim Insurance Relief Act of 1999 ("HVIRA"), Cal. Ins. Code §§ 13800-13807 (1999). That statute requires the disclosure of certain information pertaining to Holocaust-era insurance policies written in Europe. Following the Supreme Court's disposition of the case in their favor, plaintiffs sought attorney's fees in this court. We remanded the fees question to the district court, which denied the request. The appealable order was appealed.

This appeal presents two principal questions. First, did the district court err when it held that plaintiffs were not prevailing parties within the meaning of 42 U.S.C. § 1988? Second, do the foreign affairs power of the Executive branch and the related executive agreements between the United States, Germany, Austria, and France create private rights within the meaning of 42 U.S.C. § 1983?

We hold that plaintiffs are prevailing parties and are thus entitled to an award of a reasonable attorney's fee. Because we hold that plaintiffs are prevailing parties, we do not reach the question whether executive actions under the foreign affairs power create justiciable private rights. Therefore, under the authority of *Maher v. Gagne*, 448 U.S. 122 (1980), we remand to the district court for a determination of the proper fee.

## I.  Factual Background and Procedural History

Because the facts of this case have been set forth by this court and by the Supreme Court in detail, *see Gerling Global Reinsurance Corp. of Am. ("Gerling Global") v. Low*, 240 F.3d 739, 754 (9th Cir. 2001) ("*Gerling I*"); *Gerling Global v. Low*, 296 F.3d 832 (9th Cir. 2002) ("*Gerling II*"); *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003), we recount only the basic procedural history here.

Plaintiffs brought this action seeking declaratory and injunctive relief from the enforcement of HVIRA, claiming that the statute violated the Commerce Clause, Due Process Clause, foreign affairs power, and other constitutional provisions. The district court concluded that plaintiffs "demonstrated a probability of success on the merits that the HVIRA is unconstitutional in violation of the federal foreign affairs power and a violation of the Commerce Clause." *Gerling Global v. Quackenbush*, 2000 WL 777978, *13 (E.D. Cal. June 9, 2000). After finding that the balance of irreparable harm favored the plaintiffs, the district court granted a preliminary injunction and enjoined the enforcement of HVIRA and its implementing regulations. *Id.* at *13-14.

The Commissioner appealed and we reversed, leaving the preliminary injunction in place. We remanded the case to the district court to consider plaintiffs' due process claims. *Gerling I*, 240 F.3d at 754.

On remand, the district court granted plaintiffs' motion for summary judgment and permanently enjoined the Commissioner from enforcing HVIRA, holding that "[b]y mandating license suspension for non-performance of what may be impossible tasks without allowing for a meaningful hearing, HVIRA deprives plaintiffs of a protected property interest without affording them due process of law." *Gerling Global v. Low*, 186 F. Supp. 2d 1099, 1113 (E.D. Cal. 2001).

The Commissioner again appealed the district court decision. During the pendency of that appeal, the plaintiffs filed a motion with the district court seeking attorney's fees under 42 U.S.C. § 1988. The district court denied the motion, and plaintiffs timely appealed.

In *Gerling II*, we reversed the district court and held that HVIRA did not violate plaintiffs' due process rights, the Commerce Clause, the foreign affairs power, the Bill of Attainder Clause, the Contract Clause, the Equal Protection Clause, or the Fourth Amendment. 296 F.3d 832. We concluded that plaintiffs were not "prevailing parties" under 42 U.S.C. § 1988 and therefore were not entitled to attorney fees. *Id.* at 851.

The Supreme Court granted certiorari. *Am. Ins. Ass'n v. Low*, 537 U.S. 1100 (2003). The grant of certiorari "encompassed three of the questions addressed [in *Gerling I* and *Gerling II*]: whether HVIRA intrudes on the federal foreign affairs power, violates the self-executing element of the Foreign Commerce Clause, or exceeds the State's 'legislative jurisdiction.' " *Am. Ins. Ass'n*, 539 U.S. at 413 n.7. The Court reversed this court's judgment, holding that HVIRA was preempted by Executive Branch authority over foreign policy. *Id.* at 420. The Court did not address the Commerce Clause and Due Process Clause issues. *Id.* at 413 n.7 ("Because we hold that HVIRA is preempted under the foreign affairs doctrine, we have no reason to address the other questions.").

Following the Court's decision, plaintiffs sought attorney's fees and moved this court for supplemental briefing and oral argument. We transferred the fee issue to the district court for consideration on a factual record. *Gerling Global v. Low*, 339 F.3d 1078 (9th Cir. 2003) ("*Gerling III*").

The district court declined to award fees because it concluded that the foreign affairs power did not implicate "a right, privilege, or immunity secured by the Constitution or

laws of the United States" and therefore could not form the basis of a 42 U.S.C. § 1983 claim.

## II.   The Prevailing Party Determination

**[1]** The Civil Rights Attorney's Fee Award Act of 1976 provides, in relevant part: "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (b). 42 U.S.C. § 1983, in turn, protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The first issue is whether plaintiffs constitute "prevailing parties."

**[2]** The Supreme Court has summarized the "prevailing party" determination as follows:

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, [*Hewitt v. Helms*, 482 U.S. 755, 760, 107 S. Ct. 2672, 96 L.Ed.2d 654 (1987)], or comparable relief through a consent decree or settlement, *Maher v. Gagne*, 448 U.S. 122, 129, 100 S. Ct. 2570, 65 L.Ed.2d 653 (1980). Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. *See Hewitt*, [482 U.S. at 764] . . . In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). We hold that plaintiffs are prevailing parties in this litigation. Plaintiffs not only obtained "some" relief on the merits of their claim, they

received all of the relief they sought in their lawsuit—a permanent injunction enjoined the enforcement of HVIRA. Clearly, the ruling of the Supreme Court modified the Commissioner's behavior by "materially alter[ing] the legal relationship between the parties." *See id.*

**[3]** The second issue is whether the plaintiff prevailed under a fee-generating legal "right." The Supreme Court decided for the plaintiffs relying on the implied preemption of HVIRA by the foreign affairs power of the Executive branch. The Commissioner argues that, because the Supreme Court ruled in favor of plaintiffs on a ground not covered by § 1983, the plaintiffs are not § 1988 prevailing parties. We are thus faced with the question whether a court, in an action containing both fee-supporting § 1983 claims and a claim which may not independently support a fee award, may deprive plaintiffs of attorney's fees by grounding its ruling on the non-fee-generating claim. Answering this question in the affirmative would be inconsistent with both Supreme Court and Ninth Circuit precedent.

Beginning with the assumption that the foreign affairs power does not confer rights within the meaning of § 1983, we must determine whether the claims left unaddressed by the Supreme Court, but included in its grant of certiorari—the Commerce Clause and Due Process Clause claims—may support an award of attorney's fees. Due Process Clause and Commerce Clause claims are both properly cognizable, fee-supporting claims under § 1983. *See, e.g.*, *Dennis v. Higgins*, 498 U.S. 439, 446 (1991) (Commerce Clause); *Paul v. Davis*, 424 U.S. 693, 696-97 (1976) (Due Process Clause). Plaintiffs urge us to apply *Maher v. Gagne*, 448 U.S. 122 (1980), and its progeny to conclude that fees are appropriate here because the unaddressed claims were both substantial and arose from a common nucleus of operative fact with the foreign affairs power claim.

**[4]** *Maher* held that an award of fees is appropriate where a "plaintiff prevails on a wholly statutory, non-civil-rights

claim pendent to a substantial constitutional claim or in one in which both a statutory and a substantial constitutional claim are settled favorably to the plaintiff without adjudication." *Id.* at 132. The plaintiff in *Maher* advanced claims under the Social Security Act and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *Id.* at 124-25. The parties settled through a consent decree before a final adjudication of any of the claims. *Id.* at 126 & n.8. Noting that "[n]othing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated," and emphasizing the policy supporting a broad reading of the fees statutes, the Court affirmed the award of fees to the plaintiff. *Id.* at 129-30.

**[5]** Although the matter in *Maher* was settled through a consent decree, the *Maher* holding applies equally to the determination of pendent claims through litigation. *See, e.g.*, *Carreras v. City of Anaheim*, 768 F.2d 1039, 1050 (9th Cir. 1985), *abrogated on other grounds by Los Angeles Alliance for Survival v. City of Los Angeles*, 993 P.2d 334 (Cal. 2000) (awarding fees where plaintiff prevailed, through litigation, on pendent state constitutional law claims).

*Carreras* provides some guidance here because it demonstrates *Maher*'s applicability in the context of litigation, but it is not the panacea plaintiffs propose. In that case, the International Society for Krishna Consciousness of Laguna Beach, Inc. (ISKCON) sued the City of Anaheim over the city's prohibition of ISKCON's practice of soliciting donations in the parking areas and walkways surrounding the Anaheim Stadium and the Anaheim Convention Center. 768 F.2d at 1041. The district court, relying on federal constitutional law, held that ISKCON was not entitled to relief as to the stadium area because that area was not a public forum. *Id.* at 1045 & n.10. However, the district court did grant ISKCON relief with respect to the convention center, also relying upon federal law in reaching its conclusion. *Id.* at 1046 & n.15. On appeal, this

court did not reach the federal constitutional question but, relying on the California constitution, we reversed the district court's holding on the stadium issue. Despite the fact that we did not explicitly reverse the district court's federal constitutional analysis, *see id.* at 1045 n.10, we relied on *Maher* to award attorney's fees. *Id.* at 1050. We are aware that *Carreras* is distinguishable because ISKCON did prevail on a fee-supporting claim—the convention center claim—at the district court level. Moreover, we reversed the district court's convention center holding on different grounds, rather than avoiding that issue altogether. However, we do not read *Carreras* to impose a limit on our ability to award a fee in this case. Rather, we read *Carreras*'s application of *Maher* to support an award of fees where, as here, the court of highest authority to hear a case avoids resolution of a fee-supporting federal claim.

## A.   *Applicability of* Maher

**[6]** *Maher* advocated a "substantiality test" for determining whether a pendent claim can support an award of fees:

> In some instances . . . the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. [*Hagans v. Lavine*, 415 U.S. 528 (1974)]. In such cases, if the claim for which fees may be awarded meets the 'substantiality' test, *see* [*id.* at 537-38; *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)], attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a 'common nucleus of operative fact.' [*Gibbs*, 383 U.S. at 725].

*Maher*, 448 U.S. at 132 n.15 (quoting H.R. Rep. No. 1558, at 4 n.7 (1976)). Under this formulation, we conclude that, for

the purpose of qualifying a prevailing party, an unaddressed, fee-supporting claim supports an award of fees if it is both substantial and arises from a common nucleus of operative fact with a dispositive, non-fee-supporting claim addressed by the court. That the substantiality test speaks of situations in which a "non-constitutional claim is dispositive" does not dilute its relevance when a claim, such as the implied preemption claim at issue here, may be termed a "constitutional claim." A court's decision to resolve one constitutional question and to avoid others does not exempt the attorney's fee question from the reasoning of *Maher*.

[7] We turn now to the application of the *Maher* substantiality test to the Due Process Clause and Commerce Clause claims. A claim is constitutionally insubstantial if it is "essentially fictitious . . . wholly insubstantial . . . obviously frivolous . . . [or] obviously without merit. *Hagans*, 415 U.S. at 537-38 (quotations and citations omitted). This panel has twice grappled with the fee-supporting issues in detail. *See Gerling I*, 240 F.3d at 754; *Gerling II*, 296 F.3d 832. The extent of our previous analysis demonstrates that the Due Process Clause and Commerce Clause claims brought by plaintiffs were not constitutionally insubstantial.

[8] Claims arise from a common nucleus of operative fact where fee-supporting claims are so interrelated with non-fee claims that plaintiffs "would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725. The three claims to which the Supreme Court granted certiorari all arose from California's attempted enforcement of HVIRA. Plaintiffs correctly attempted to try all of their issues in one proceeding. We conclude that the unaddressed due process and Commerce Clause claims, which remained in the case until the final disposition by the Supreme Court, pass the "substantiality" test and therefore support an award of fees to plaintiffs. *Cf. Maher*, 448 U.S. at 131 ("Although . . . the trial judge did not find any constitutional violation, the constitu-

tional issues remained in the case until the entire dispute was settled by the entry of a consent decree.").[1]

## B. *Our Previous Holdings*

We must note that the fee determination is further complicated by the lengthy procedural history of the case, forcing us to address our previous holdings in *Gerling I* and *Gerling II*. Recognizing the admonition of the Supreme Court that "[a] request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), we briefly revisit those cases in order to put to rest the Commissioner's contention that plaintiffs cannot be considered "prevailing parties" because we previously rejected their due process and Commerce Clause claims. In *Gerling I*, we held that the district court erroneously concluded that plaintiffs demonstrated a likelihood of success on the Commerce Clause issue. 240 F.3d at 751. We further held, incorrectly, it turned out, that HVIRA did not conflict with the foreign affairs power. *Id.* at 753. In *Gerling II*, we repeated our conclusion that HVIRA did not violate the Commerce Clause or the foreign affairs power, and we determined that HVIRA also did not violate plaintiffs' due process rights. 296 F.3d at 844, 849.

---

[1]The Commissioner and Amici argue that this result is contrary to *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 592 (1995). *Truck Council* held that where an adequate state law remedy exists in a state tax case, federal courts are not permitted to award declaratory or injunctive § 1983 relief. *Id.* at 589. The Court affirmed the Oklahoma Supreme Court's rejection of the plaintiff's § 1983 claims and declined to award § 1988 attorney's fees because § 1983 relief could not be awarded. *Id.* at 592. The *Truck Council* holding is entirely consistent with our decision. If a plaintiff does not have a substantial, properly cognizable § 1983 claim, then § 1988 attorney's fees may not be awarded. In addition, if the Supreme Court in this case had expressly affirmed *Gerling II*'s rejection of plaintiff's due process and Commerce Clause claims, then plaintiffs would not be entitled to § 1988 fees.

**[9]** As discussed above, the Supreme Court did not reach either the Commerce Clause or the due process issues. Even aside from plaintiff's contention that our Commerce Clause and due process holdings were impliedly overruled by *American Insurance Ass'n*, 539 U.S. 396, however, we conclude that in exercising its discretion to award attorney's fees, a district court must focus on whether a plaintiff "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley*, 461 U.S. at 433 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)).

**[10]** The proper inquiry zeros in on the end result of the litigation: A piecemeal examination of the arguments that the court of final authority did or did not reach may be helpful in determining our prior opinions' precedential value, but it is not helpful in determining whether a plaintiff is a "prevailing party" within the meaning of § 1988 at the conclusion of the litigation. *See id.* at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.").[2] So long as an unaddressed, fee-supporting claim meets the substantiality test set forth above, and the end result of the litigation grants a plaintiff his desired relief, the unaddressed claim may support a fee award regardless of the decision of the court below. Accordingly, we conclude that our holdings in *Gerling I* and *Gerling II* do not preclude the district court from exercising its discretion to award a reasonable attorney's fee under *Maher*.

---

[2]Focusing on the end result of the litigation should answer the Commissioner's concern that the "mere grant of certiorari" will become a benchmark for granting fees. The grant of certiorari does not factor into the prevailing plaintiff calculation—only when the Supreme Court (or the court of highest authority to hear a case) rules in favor of a plaintiff and grants him the relief he sought will that plaintiff be considered prevailing under § 1988.

We are not unaware of our holding in *Mateyko v. Felix*, 924 F.2d 824, 828 (9th Cir. 1991). In that case, the court did not invoke principles of avoidance; rather, "it found that [Mateyko] had no constitutional claim at all," and granted a directed verdict on all of the § 1983 claims. *Id.* at 829 (quoting *Reel v. Ark. Dep't of Corr.*, 672 F.2d 693, 698 (8th Cir. 1982)). A jury, reviewing the remaining state law claims, found Mateyko was 96% contributorily negligent for his state negligent infliction of emotional distress claim, and entered a judgment in his favor for 4% of his damages. *Id.* at 825. We rejected Mateyko's claim that this small victory made him a prevailing plaintiff. *Id.* at 828-29. This result is consistent with our holding above because, at the conclusion of litigation and after we affirmed the directed verdict, no fee-supporting claims remained in the case—Mateyko could not invoke *Maher* because there *was no* unaddressed fee-supporting claim which could pass *Maher*'s substantiality test. In such a case, awarding an attorney's fee is inappropriate.

## C.  Policy Considerations

**[11]** Quite apart from the applicability of *Maher*, the policy behind the enactment of § 1988 and the prudential policy of avoiding constitutional questions further supports the conclusion that plaintiffs should be awarded a reasonable fee in this case. "As the legislative history illustrates and as [the Supreme Court] has recognized, § 1988 is a broad grant of authority to courts to award attorney's fees to plaintiffs seeking to vindicate federal constitutional and statutory rights." *Smith v. Robinson*, 468 U.S. 992, 1006 (1984), *overruled on other grounds by* 20 U.S.C. § 1415(*l*). Furthermore, as stated in *Maher*, a fee award based on pendent claims "furthers the Congressional goal of encouraging suits to vindicate constitutional rights without undermining the longstanding judicial policy of avoiding unnecessary decision of important constitutional issues." 448 U.S. at 133 (quoting *Gagne v. Maher*, 594 F.3d 336, 342 (2d Cir. 1979)). We decline the Commissioner's invitation to conclude that the Supreme Court must

rule in favor of a plaintiff on a specific, fee-supporting aspect of the case in order for a plaintiff to be considered a prevailing party. Rather, applying the Supreme Court's "generous formulation" of the prevailing party definition, *see Farrar*, 506 U.S. at 109 (quoting *Hensley*, 461 U.S. at 433 (1983)), we hold that the district court read § 1988 too narrowly and assumed that it lacked discretion to award plaintiff insurance companies a reasonable attorney's fee.

## III.   The Foreign Affairs Power and § 1983

**[12]** The district court concluded that the foreign affairs power did not "implicate a right, privilege or immunity secured by the Constitution or laws of the United States" and therefore did not constitute a § 1983 claim. That conclusion may have been correct as an abstract proposition, but it did not support the further conclusion that plaintiffs were not prevailing parties. Because we reverse the district court on the prevailing party point, we need not reach the question whether the foreign affairs power independently confers private rights. The fact that plaintiffs' Due Process Clause and Commerce Clause claims *are* properly cognizable claims under § 1983 satisfies our inquiry and should result in a fee award to plaintiffs.

## IV.   Conclusion

For the reasons set forth above, we REVERSE the denial of § 1988 attorney's fees and REMAND this case to the district court with instructions to exercise its discretion to determine a reasonable amount of attorney's fees in accordance with *Hensley*, 461 U.S. 424, and *Webb v. Sloan*, 330 F.3d 1158, 1167-70 (9th Cir. 2003). The award shall include an allowance for fees and costs incurred in contesting the district court's denial of fees.

GRABER, Circuit Judge, concurring in the result:

I concur in the result for the following reasons.

1.  The claim of preemption by the foreign affairs power is not a fee-generating claim, for the reasons ably explained by the district court. In short, the foreign affairs power, like the Supremacy Clause, creates no individual rights enforceable under 28 U.S.C. § 1983. *Cf. Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989) ("[T]he Supremacy Clause, of its own force, does not create rights enforceable under § 1983."); *Associated Gen. Contractors v. Smith*, 74 F.3d 926, 931 (9th Cir. 1996) ("[P]reemption of state law under the Supremacy Clause—being grounded not on individual rights but instead on considerations of power—will not support an action under section 1983, and will not, therefore, support a claim for attorneys' fees under section 1988." (alteration in original) (internal quotation marks omitted)).

2.  The due process and Commerce Clause claims are fee-generating claims under 28 U.S.C. §§ 1983 and 1988. But Plaintiffs lost those claims before this court.

3.  Plaintiffs' entitlement to fees, then, depends on what happened to the various claims at the Supreme Court. Had Plaintiffs not sought certiorari on the fee-generating claims, or had the Supreme Court upheld our result on those claims, Plaintiffs would not be entitled to fees. *See Mateyko v. Felix*, 924 F.2d 824, 828 (9th Cir. 1991) ("Where, as here, there has been a decision adverse to plaintiff on the section 1983 claim, section 1988 does not authorize the award of attorney's fees."). But neither of those things happened here.

Rather, Plaintiffs sought and received a writ of certiorari on both their fee-generating claims and their non-fee-generating claim. The Court held in Plaintiffs' favor on the non-fee-generating claim without reaching the fee-generating claims

at all. Under the principles that we announced in *Carreras v. City of Anaheim*, 768 F.2d 1039, 1050 (9th Cir. 1985), *abrogated on other grounds by Los Angeles Alliance for Survival v. City of Los Angeles*, 993 P.2d 334 (Cal. 2000), and that the Supreme Court set forth in *Maher v. Gagne*, 448 U.S. 122, 132-33 (1980), Plaintiffs are entitled to fees. The Supreme Court had the opportunity to decide the fee-generating claims and chose not to do so;[1] the policies identified in *Carreras* and *Maher* therefore counsel in favor of awarding fees.

---

[1]The Court's decision thereby leaves our opinion in *Gerling Global Reinsurance Corp. of America v. Low*, 296 F.3d 832 (9th Cir. 2002), *rev'd sub nom. American Insurance Ass'n v. Garamendi*, 539 U.S. 396 (2003), with precedential effect on those issues.